## HATCH et al. v. THE NEWPORT.

*(Circuit Court, S. D. New York. November 18, 1890.)*

1. **ADMIRALTY—REHEARING—NEWLY-DISCOVERED EVIDENCE.**
   After a libel for collision had been determined against libelants and a stipulation entered into by both parties to dismiss the action, libelants asked a rehearing, on the ground of the newly-discovered evidence of passengers of the libeled steamship. Libelants had a list of these passengers at the trial, but did not know their residences. Their affidavit alleged that they had afterwards learned the residences of these passengers through the Spanish consul. *Held*, that a rehearing would not be granted, as no excuse was given for failure to find the passengers' residences by the same means before the trial.

2. **SAME.**
   Nor is it ground for such rehearing that new evidence has become available through some of the steamer's crew, where libelants, before the trial, had a full list of such crew, and knew which of them claimants would not examine as witnesses, but did not call any of them.

3. **SAME.**
   Nor is it ground for such rehearing that libelants have discovered a witness who was in sight of the steamer the morning after the collision, where information of the whereabouts of such witness was obtained from the diary of a passenger, so that, if the passenger had been found before the trial, the witness might have been found too.

4. **SAME—EXPERT EVIDENCE.**
   Newly-discovered expert evidence as to the distance at which shore lights can be seen, and as to the effect of a change of helm in giving a list to a vessel, is no ground for such rehearing, as such evidence might have been obtained at the trial.

In Admiralty.

*George A. Black*, for Hatch.

*Goodrich, Deady & Goodrich*, for the Newport.

LACOMBE, Circuit Judge. After the final decision of this court upon motion for a rehearing, rendered April 9, 1889, (38 Fed. Rep. 669,) a stipulation to discontinue the action was on June 4, 1889, entered into by both parties. This was done at the request of the libelant, ostensibly to save the expense of entering and satisfying the decree of the circuit court, and the costs of district and circuit courts were thereupon paid by him. Had this stipulation not been made, it must be assumed that the claimant would have entered the final decree in regular course. Had such final decree been entered, this court would be precluded by its rule from granting a rehearing. Dist. Ct. Rule 155; Cir. Ct. Rule 136; *Hogg* v. *The Annex No. 3,* 27 Fed. Rep. 516, 35 Fed. Rep. 560, (E. D. N. Y.) Without passing upon the question whether, when the decree has been entered, the court may relieve a party from the operation of such a stipulation at any time, it would be sufficient for the disposition of the present motion to hold that the libelant, having, by means of the stipulation, induced the claimant to refrain from entering a final decree, should be held to the strictest application of the ordinary rules by which motions for rehearing are tested. Such motions are not granted where the new evidence which a party seeks to introduce could by the exercise of proper diligence have been produced on the trial. All the new witnesses named by the libelant may be divided into five groups:

1. *Passengers.* Before the trial the libelant had obtained a list of the passengers from the Spanish consul. This list gave no residences, and the detectives employed by him were able to discover very few of them, and one only was called as a witness and examined in this court. Several passengers are now offered as new witnesses. The affidavit, however, gives no satisfactory excuse for the failure to discover their whereabouts before. It states that, after the trial and decision, (and after a period of ill-health,) libelant's counsel "set about investigating whether there could not be some new evidence discovered," and "following out the traces obtained, (from the Spanish consul's list and the efforts of the detectives before the trial,) he ascertained the whereabouts of additional passengers." How this was done the affidavit does not set forth, but on the argument it was stated that information as to their addresses was obtained from the state department, through the bureau having charge of the issue of passports. It is no ground for reopening the case that this method of investigation did not occur to the detectives or to counsel till the winter succeeding its final disposition. It was available from the very inception of the case in the district court, and probably if it had been put in practice then would have resulted in discovering the proffered witnesses with much less trouble than when undertaken nearly five years later.

2. *The Crew.* It appears that several months before the trial in this court, and while additional testimony was being taken, the libelant was furnished by the claimant with a full list of the crew of the Newport. At that time the trial in the district court had advised him which of these witnesses his adversary did not intend to call. He did not call any

of them himself, (other than those examined in the district court,) nor did he apply for a continuance of the case to enable him to discover their whereabouts, apparently relying upon the inferences which he insisted should be drawn from their non-production by his adversary. As to these witnesses the affidavit merely states—

"That, through sources of information which became known to deponent only after his recovery to health, in the winter of 1889–90, deponent got on the track of persons who were members of the crew of the Newport, besides those examined herein."

There is nothing to show that the same methods of investigation as energetically applied would not have enabled him to get on the track of those witnesses before the trial of the case in the circuit court.

3. *A witness from a coastwise steamer that was in sight of the Newport the morning after the collision.* Information as to the presence of such steamer was obtained from the diary of a passenger. Had the passenger been found before, this witness could also have been found.

4. *Experts as to the distance at which shore lights can be seen; as to the effects of collision; and as to the effect of a change of helm upon the list of a vessel.* Such evidence could of course have been obtained on the trials both in the district and circuit courts.

5. *The chief officer of the schooner Parker M. Hooper, which, on February 23, 1884, (the night of the collision,) came in contact with a mast sticking out of the water, near the place of collision.* No particular explanation is given in the affidavit as to the discovery of this witness, but, assuming that it was wholly fortuitous, there is not enough in his testimony to warrant the reopening of the case after this lapse of time. The motion is denied.